Good morning, Your Honor. My name is Erin Radigan. I am counsel for William Rennie, III. May it please the Court, the first issue that I would like to discuss is Mr. Eldridge has cited additional authority, Metris v. Lancaster and Marshall v. Rogers. Your Honor, neither case stands for the proposition that you can't grant relief in a habeas case unless you have identical facts to some United States Supreme Court case. In Metris, the Court held that where there's room for reasonable disagreement about whether a general standard applies, a general United States Supreme Court standard applies, then you can't grant habeas relief. And in Marshall, the Court merely said that an appellate court cannot appropriately rely on circuit precedent that refines or sharpens a general United States Supreme Court rule. Mr. Rennie acknowledges that the applicable standards in this case are Barker v. Wingo and Dockett v. United States, and he contends that he is entitled to relief under those rules. Let me ask you a question about the record in this case. There's an extraordinarily long delay, 8 years, but at any point during those 8 years, does your client until the very end demand a speedy trial? No, he doesn't, Your Honor, not formally. Well, but even informally. Your Honor, this is a case where his attorney was continuously in communication with the prosecution, and the prosecution had made a representation that it was going to dismiss. At no point did he demand a speedy trial? He did not formally demand a speedy trial. Informally, did he demand a speedy trial? I would say he did informally when his attorney was repeatedly telling the prosecution. We – the record reflects that from even before the trial, repeatedly telling the prosecution, are you going to dismiss? If not, bring this case to trial. Well, tell me where the second half of that is. I see lots of – I see lots of I want to confirm or discussion that you're going to dismiss, but I don't see even an informal demand to bring the case to trial. Where is that in the record? An informal demand? Yes. Well, even in the motions to dismiss, in the trial court proceedings. No, that's – that's when the motion – I understand when the motions are eventually filed to dismiss for lack of speedy trial. But tell me where in these informal discussions with the prosecutor, as I read them, he's saying, you know, we talked about dismissing this. Please do that. In his declaration, he says that he asked the prosecution to either dismiss or bring the case to trial. And there's also declarations in the record where he says that he was having these communications with his attorney. In the motions to continue, there's declarations where he says that he wants the case to either be dismissed or go to trial. Is that a sufficient demand, assuming that occurred? Is that a sufficient demand for a speedy trial? In other words, lots of points along the way, your client, Mr. Rennie, could have said, bring me to trial or even to extradite me or make a – what's it, a 1386 demand or whatever the number is. But I don't see anything in the record. And my concern is whether or not, given our habeas standard, we can find a settled law under Supreme Court jurisprudence that somebody who doesn't formally demand a speedy trial or demand extradition can have those rights violated. Could you respond to that? There are two things, Your Honor. Number one, in Barker v. Wingo, the Court specific – expressly held that you – that rejected a rigid demand waiver rule and stated that you can consider equitable considerations and consider the particular circumstances of a case. This is a case where the prosecution contributed to this delay, made a representation about dismissal, and repeatedly rebuffed the defense. Even in 2008 – Doesn't it make more sense to construe that as the – as your client's acquiescence? Because if he thought the case was going to be dismissed, why would he want to hurry it up? It seems to me that it's – a fairer reading of what he was doing was acquiescing in the delay in the hope that the prosecutor ultimately would decide to dismiss the charges. That's not acquiescing in not wanting a trial. That's acquiescing in wanting the prosecution to dismiss. The prosecution made these representations, and then – Sotomayor, I don't know if this is a petition on the basis of being misled by the prosecution or somehow following the prosecution's lead and that they were stopped now from saying something. Those would be good arguments. But for the argument that it's – that you've demanded a speedy trial, it seemed quite the contrary. You were demanding a dismissal. Two things, Your Honor. Number one, this record reflects that he tried to get the appropriate documents and was not able to get the prison authorities to assist him. And it is not easy to file under the IAD when the prison authorities are not giving the appropriate documents. Was he represented by counsel during that time period? He was represented by counsel, and his attorney told him not to file under the IAD. And Mr. Monk helped states in the record in his declaration that he told him not to file under the IAD, that the case would be dismissed, it would never go to trial. Didn't it make sense not to file? I mean, the questions that my colleagues have asked suggest a scenario here that seems likely to me, which is that there's a – he's got a problem. He's eventually convicted. There's a witness. The witness may have a bad memory. Eight or nine years later, the prosecution may decide not to push the case. And so if I were defense counsel in this case, at least with perfect hindsight, I might have said, let this one sit, maybe they'll let it go. You're already in jail. Maybe they won't prosecute you, and maybe the witness will recant or decide not to go forward. What good strategic reason would he have had under these circumstances for wanting a speedy trial? He did have a strategic reason for not wanting a speedy trial because of the prosecution's representations. No, but put aside the representation, flip it aside. You're a good defense lawyer. Why would you want a speedy trial in this case? Your Honor, because in this case, the delay was getting so great. He had a detainer. He was anxious. He was calling his attorney every month, the record reflects. He was anxious about this case and wanted the hold removed. He had more severe incarceration conditions. And I want to make sure I say on the record, I don't believe deference is appropriate here. The superior court did not apply the correct standard. The superior court did not find presumptive prejudice, found that Mr. Rennie did not show prejudice, and found – did not find that the prosecution is – has to – has the burden of justifying this delay. And also, the prosecution here was not just negligent. This is a case where Munkhout was repeatedly saying to the prosecution, what are you going to do? And they – and Mr. O'Rourke's saying, I'm going to consider my options. Well, how about – I wanted to ask you about that, because it seems to me there's two sets of prosecutorial responses. There's the initial prosecutor who remains on the case for how long? She was only on the case, I think, for a couple years. For a couple years. And there are, I think, ambiguous communications there. When the second prosecutor comes on, doesn't that prosecutor make quite clear, I haven't agreed to do anything, I'm just going to consider what I want to do, I'm going to keep my options open? The record does not reflect that, Your Honor. The record reflects that the prosecutor said, I'm considering my options. Well, that's – okay. That's – I'm sorry. That's – I thought that's exactly what I said. Once that second prosecutor comes on and says, I'm considering my options, a year or two, so take the first year or two off just for purposes of discussion, during the next six years, certainly your client can't think that he's been promised the case is going to be dismissed, can he? His attorney was telling him that. Well, does attorney put files of declaration saying that I'm told that by the second person I'm considering my options? That can't be a representation that I'm going to dismiss, is it? That his attorney was telling him that the case would be dismissed and would never go to trial. Your Honor, I'd like to reserve the rest of my time for rebuttal. Good morning, Your Honor. I'm going to start with David Andrelich, Deputy Attorney General for Respondent. May it please the Court. In answer to your question, there was no demand for trial at all during the six-year period, which – let me actually begin by saying there's no justification offered for the six-year delay. It appears clearly to be negligence. However, the argument that the State court didn't apply the right standard because it didn't presume prejudice is by definition incorrect. Until prejudice is presumed, until you have a delay long enough to presume prejudice, there simply is no inquiry into the other reasons. So by inquiring into those reasons, the Court found that the presumptive prejudice standard had been met under Barker at 530, which says until there is some delay which is presumptively prejudicial, there is no need for inquiry into the other factors that go into the balance. So the very fact that the Court went on to consider the further points implies the Court found, okay, we have a delay that's sufficiently prejudicial, whether it's six years, eight years, or really anything more than one year. And there is – and so the first – there's – no one really debates that the length of delay was presumptively prejudicial. Kennedy, on the second prosecutor, consider this difficult decision. I – well, there's a question between 1999 and 2000 when McManus left. When McManus left, the original – the original deputy DA left the office in 1990 or 2000. Mr. Rennie was back in court in California, I believe, in 2004. So we have a four- or five-year period when McManus was gone, but we actually don't know precisely when the first time was that the second prosecutor actually even looked at the case, because there appears to have been some negligence in attending to this case, given that Mr. Rennie was in Oregon already. Is there – is there a period of time that just automatically results in deprivation of Sixth Amendment rights? There – that might be the case at some point, but the Supreme Court hasn't held so yet. What they've done is really focus on discrete periods that we've seen. It might be the case that if they get one where there's a 20-year delay and the prosecution could have brought the person to trial, that that would be the end of it. They haven't said so yet, and that – that remains an open question. It very well could be, but they haven't said so. Did the Superior Court in this case actually find that there was no prejudice from the delay? Or is it – Pardon me. I'm sorry. Did the Superior Court in this case actually find there was no prejudice from the delay? Yes. It said it found – well, it found there was sufficient – insufficient evidence to prove it. That's my question. Is that – is that a finding that we defer to, or is it a finding that was just made on the record? There weren't any witnesses testifying to that, were there? I understand. If the defendant has the burden of proof, Your Honor, and finding an absence of proof means that the defendant has failed on that prong, and this Court must indeed defer to that ruling by the State court. So we would have to find that factual ruling unreasonable, or that factual-slash-legal ruling unreasonable, in order to find prejudice? Yes, Your Honor. However, you actually don't have to reach that point. The – while there's been dispute in the briefs that – that a court should have focused on 8 years versus 6 years, to be clear, in Doggett itself, which was another 6-year delay – 6-year negligence case, the Court focused on – while it noted that there had been a total of 8 years, they focused precisely on the 6-year period that the government was responsible for. In that, they said, when the government's negligence thus causes delay six times as long as that's generally sufficient to trigger judicial review, which is one year. Why is it that your contention is that the State's only responsible for 6 years here? Well, they brought – they were actually ready to bring him to trial within a reasonable time after his arrest. It's just that he disappeared to Oregon. So there's no question that they were diligent up until – How long would it have taken to get him back if you wanted to try him? If you wanted to try him? If you – no, if you wanted to try him, put aside whether he wanted a trial, how long would it have taken you to get him back from Oregon? I doubt it would have taken very long, Your Honor. So that's why I'm having trouble with two years being carved out of this equation. Well, but there's no question they did bring him to trial, if you will, within the first two years, because it was the day of trial that they came and he was gone. So they had acted with diligence up to that point. Oh, I see. So your argument is that none of the delay during those first two years is attributable to the State because they were ready to bring him to trial? Yes. It was the day of trial. Okay. I understand that. But, again, there is no doubting that six years went by with negligence. But even in Doggett, which is the only case that has found a violation of the speedy trial right, the Court said flat out when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, then he is entitled to relief. Some fair-minded jurist could surely say that when there is acquiescence, any presumptive prejudice is extenuated. And that's what we have here. The defendant could have brought himself to trial at any point. We're not disputing the fact that the government also had a duty to bring him to trial. They did. And they were negligent in failing to get him there during that six years. But he didn't want a trial. He wanted and hoped for a dismissal, which really makes him no different than the defendant in Barker v. Wingo. He was hoping that after enough delay or any other developments, the prosecution would dismiss. And the argument that, well, I made my motion for a speedy trial dismissal as soon as it became clear that they were going to prosecute me really says nothing more than once it was clear that my gamble had failed, then I tried something else. That's exactly what the defendant in Barker v. Wingo did. He waited until his gamble failed, and then he started objecting. And the Supreme Court found that very clear, that to be very clear evidence that he didn't want to go to trial. And granted, no defendant really does want to go to trial. But the fact that you are willing to endure pre-trial delay or, yes, post-arrest pre-trial delay because you're hoping that it will work out in the form of dismissal means you're gambling. And you can't then come back and say, hey, I endured all that time just because your gamble lost. All right. Also, the assertions that counsel would, that counsel told defendant not to file, counsel advised defendant not to file according to his declaration, not ordered him not to. And there's absolutely nothing in the record to show that counsel would have not filed it had defendant said, I want to do that anyway. So he did not have to rely on anyone else for assistance. He had actually counsel who, and there's no evidence that counsel wouldn't have filed a request had he asked. Thank you, Your Honor. Your Honor, with regard to that last response, last statement, in Mr. Rennie's affidavit, he says that he was repeatedly asking Mr. Munkhout, that he's saying that he wanted to file under the IAD, and asking him to assist him, and that he asked prison authorities to assist him, and he knew that he needed to get their certification. The State has never refuted that. And they can't, this facts are repeatedly being ignored. But there's never been any evidence to refute that. So is that, that's part of your ineffective assistance of counsel claim? And it also shows that he did want a speedy trial, and that was, and he asked, he made attempts to file under the IAD, but he was not able to. And in the State courts, and under the IAD, that shifts the burden to the prosecution to show that there was no demand. Also, under Dockett, Dockett held that where there is sufficient, and there is 8 years of delay here, the prosecution has never, has the burden of justifying the delay. There was no waiver of time in the record, just general waivers. Under those circumstances, you look at the entire period of delay of 8 years. There's nothing indicating that the defendant specifically waived time during that time. Furthermore, in Dockett, they said where there's delay of that length, and there's negligence, and in fact here, intentional, knowing delay, where the prosecution is repeatedly told, we want to settle this case and finish this, and then again, this is not where it's just stuck in a file in a drawer somewhere. This is where the prosecution knows that they want to dispose of this case, and it intentionally chose to delay it and put it out even further. Thank you, counsel. Time's up. The case, as argued, will be submitted.
judges: Reinhardt, Graber, Hurwitz